

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00282-CR

JAMES RILEY LEMONS,

**Appellant**

 v.

THE STATE OF TEXAS,

**Appellee**

**From the 278th District Court
Walker County, Texas
Trial Court No. 26,631**

## MEMORANDUM OPINION

A jury convicted Appellant James Riley Lemons of possession of less than one gram of cocaine. The trial court assessed punishment at the maximum of two years' confinement in a state jail facility. In one issue, Lemons asserts that the trial court erred in denying his motion to suppress. We will affirm.

*Background*

The sole evidence presented at the suppression hearing was the testimony of Jeremy Carroll, a patrol officer with the Huntsville Police Department. Carroll testified that he was dispatched to investigate a prowler at an air conditioning and heating company on the evening of August 1, 2013. The owner of the company reported that the business was closed but that someone was seen on security cameras at the rear of the business. When Carroll arrived at the business, he spotlighted the rear area and saw someone duck behind a box truck parked at the loading dock. Carroll could also see movement underneath the truck. He left his patrol car, approached the area with gun pointed, and verbally directed whoever was behind the business to show themselves. An individual, later identified as Lemons, emerged from behind the truck, and Carroll directed him to lie on the ground. Carroll testified that he believed Lemons was under arrest at that point for criminal trespass.

After another unit arrived, Carroll placed Lemons in handcuffs and checked him for weapons. Carroll felt something "kind of long and tubular" in Lemons' pocket and removed what he believed was a crack pipe. Carroll categorized the search as one incident to an arrest. Carroll and the other officer then searched the immediate area for other suspects, and they discovered a bag of tools and some damaged air conditioning units in the area where Lemons had been. Carroll then took Lemons to jail. Carroll testified that he ultimately arrested Lemons for possession of drug paraphernalia, although he also believed that Lemons had committed criminal trespass at the closed business. Lemons was searched again at the jail as part of the booking process, and a

rock of crack cocaine was discovered in his pocket. The discovery of the cocaine led to Lemons' conviction.

After considering the testimony at the hearing on the motion to suppress, the trial court held:

> The Court finds and holds the officer had reasonable suspicion to investigate the scene of the potential offense involved. The Court finds and holds that probable cause exists to search the Defendant after the search was conducted incident to an arrest. Court further finds that the search at the jail was an inventory search, when the drugs were found, and those would be allowed also. Now having said all that, the motion to suppress is denied.

In his sole issue on appeal, Lemons asserts that the trial court erred in denying his motion to suppress. Lemons does not contest the search at the jail that led to the discovery of the crack cocaine in his pocket. Rather, he argues that the search at the scene of his arrest that uncovered the crack pipe was improper as either a frisk for weapons or a search incident to arrest. Lemons notes that Carroll did not articulate any basis to believe that Lemons was armed, nor did he articulate any basis to believe that the cylindrical object in Lemons' pocket could have been a weapon or contraband. Lemons also argues that a search incident to an arrest was not proper because there was no probable cause to arrest him for criminal trespass. If the frisk and discovery of the crack pipe and his arrest are held illegal, than Lemons argues that the crack discovered in his pocket at the jail should be suppressed.

## *Standard of Review*

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

> We can sustain the trial court's decision if we conclude that the decision is correct under any applicable theory of law. A trial court's ruling should be reversed only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement.

*Id*. (footnoted citations and internal quotation marks omitted). We use a bifurcated standard of review in evaluating the trial court's ruling. *Id.*; *see also Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016).

> First, we afford almost total deference to a trial judge's determination of historical facts. The judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony. . . . Second, we review a judge's application of the law to the facts *de novo.* We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case.

*Cole*, 490 S.W.3d at 922 (footnoted citations omitted); s*ee also Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016) (footnoted citations omitted). "[I]f the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's rulings, and will assume it made implicit findings that are supported by the record." *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We will sustain a trial court's decision if we conclude that the decision is correct under any applicable theory of law, even if the trial court gave the wrong reason for its ruling. *State v. Binkley*, 541 S.W.3d 923, 929 (Tex. App.—Fort Worth 2018, no pet.).

*Terry Stop*

The trial court ruled that the initial detention of Lemons was appropriate as Carroll had reasonable suspicion to investigate possible criminal activity. The Fourth Amendment to the United States Constitution provides, in part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. As a general rule, searches and seizures conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception is the *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Under *Terry*, an officer may stop and briefly detain a person for investigative purposes if he has reasonable suspicion that criminal activity may be afoot, even if the facts are insufficient to rise to the level of "probable cause." *Id.*, 392 U.S. at 30, 88 S.Ct. at 1884; *see also Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

> The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

*Balentine*, 71 S.W.3d at 768 (citing *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). This is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop. *Brodnex*, 485 S.W.3d at 437

(citing *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013)). "The test is whether the facts available to the officer at the time of the seizure or search would cause a man of reasonable caution to believe the action taken by the officer was appropriate." *Peucker v. State*, 489 S.W.3d 592, 600 (Tex. App.—Texarkana 2016, pet. ref'd). While the trial court is the sole factfinder, we review *de novo* "whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain v. State*, 315 S.W.3d 43, 48-49 (Tex. Crim. App. 2010).

"[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citations and internal quotation marks omitted). Additionally, "[a]n officer's reasonable suspicion may be validly based on articulable facts that are ultimately shown to be inaccurate or false." *State v. Torrez*, 490 S.W.3d 279, 284 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing *Williams v. State*, 621 S.W.2d 613, 615 (Tex. Crim. App. [Panel Op.] 1981)); *see also Robinson v. State*, 377 S.W.3d 712, 720-21 (Tex. Crim. App. 2012) ("[A] mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be."). Finally, the articulable facts do not have to show that a detainee

"has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense." *Derichsweiler*, 348 S.W.3d at 916.

The totality of the circumstances demonstrates that Carroll had reasonable suspicion to detain Lemons for further investigation. Carroll was told that the business owner had observed an individual at the closed business when no one had authority to be there. Carroll personally observed someone lurking at the loading dock of the closed business. Carroll observed a person ducking behind a truck after seeing Carroll. Also, the suspect emerged from the shadows behind the building only after being ordered to do so by Carroll. We find that the trial court did not abuse its discretion in holding that Carroll's initial seizure of Lemons was a permissible investigatory detention based upon reasonable suspicion.

### *Terry Frisk*

When an officer has made a proper *Terry* or investigatory stop, the officer may also "conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous to the officer or others in the area." *Balentine*, 71 S.W.3d at 769; *see also Wade*, 422 S.W.3d at 669.

> The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. Such a weapons frisk will be justified only where the officer can point to specific and articulable facts which reasonably led him to conclude that the suspect might possess a weapon. The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent

person would justifiably believe that he or others were in danger. The timing of a protective search is not dispositive in evaluating its reasonableness.

*Balentine*, 71 S.W.3d at 769 (internal citations and quotations omitted).

Lemons argues that Carroll did not articulate any basis to believe that Lemons was armed or that the object he felt in Lemons' pocket was contraband or a weapon. However, an officer's failure to articulate a lawful basis for a frisk does not mean the frisk was illegal. *State v. Sheppard*, 271 S.W.3d 281, 288 (Tex. Crim. App. 2008). An officer is not required to testify that he was afraid or to identify each fact that led him to frisk a suspect. *Id*. at 287. As with the propriety of the initial detention, we evaluate an "officer safety" frisk upon *objective* criteria—"not upon the officer's *subjective* state of mind or his asserted rationale. . . ." *Id*. (emphasis added). In order to support a protective frisk, the facts must be such that a reasonably cautious person would believe "that the action taken was reasonable or that the person frisked was presently armed and dangerous." *Id*. at 287-88.

The totality of the circumstances demonstrates that a reasonably cautious person would believe that the frisk of Lemons was reasonable. Carroll was alone when he first encountered Lemons, who was hiding in a poorly-lit area after dark. It was unclear to Carroll whether there was more than one person lurking in the area. Additionally, Lemons did not immediately come into the open and identify himself, as would a person without criminal intent, but ducked behind a truck after seeing Carroll. The search of

Lemons was also limited in nature. Carroll testified that it was a quick pat down while handcuffing Lemons. Carroll identified what he felt as a long cylindrical object, something that a reasonable person under the circumstances could have believed to be a weapon. While the trial court determined that the recovery of the crack pipe was proper as a search incident to an arrest, we find that the totality of the circumstances justified recovery of the pipe pursuant to an "officer safety" frisk.

As the frisk was proper, the recovery of the crack pipe gave Carroll probable cause to arrest Lemons for possession of drug paraphernalia. *See Alexander v. State*, 879 S.W.2d 338, 343 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("If, while conducting a legitimate *Terry* search, the officer should . . . discover contraband other than weapons, he clearly cannot ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."). The fact that Carroll testified that he arrested Lemons for criminal trespass does not control. "[W]hen officers give the wrong reason for why their actions were legal under the Fourth Amendment, the case will not be reversed if the facts support a correct reason." *Davis v. State*, 74 S.W.3d 90, 95 (Tex. App.—Waco 2002, no pet.) (citing *Williams v. State*, 726 S.W.2d 99, 100-01 (Tex. Crim. App. 1986); and *Esco v. State*, 668 S.W.2d 358, 366 (Tex. Crim. App. [Panel Op.] 1982)). Because we find that the discovery of the crack pipe provided Carroll probable cause to arrest Lemons for possession of drug paraphernalia, it logically follows that there is no basis to

suppress the crack cocaine found in Lemons' possession at the jail. The trial court did not, therefore, abuse its discretion in denying Lemons' motion to suppress.

As there was probable cause to arrest Lemons for possession of drug paraphernalia, we need not decide whether there was also probable cause to arrest him for criminal trespass.

Having overruled Lemons' one issue, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 29, 2018
Do not publish
[CR25]

