_____

No. 96-1128
_____

United States of America,        *
                                 *

    Plaintiff - Appellee,     *
                                 *  Appeal from the United States
    v.                         *  District Court for the
                                 *  Northern District of Iowa.
Michael D. Menard,         *
                                 *

    Defendant - Appellant.    *

_____

Submitted:  May 14, 1996

Filed:  September 6, 1996
_____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

After Michael D. Menard pleaded guilty to possessing methamphetamine with intent to distribute and to using or carrying a firearm in relation to a drug offense, the district court[1] sentenced him to two consecutive sixty-month prison terms. Menard appeals, contesting only the court's earlier denial of his motion to suppress evidence seized during a traffic stop. United States v. Menard, 898 F. Supp. 1317 (N.D. Iowa 1995). He argues that police searched him for weapons solely because they found a concealed weapon on the vehicle's other passenger, a search that is invalid under United States v. Flett, 806 F.2d 823 (8th Cir. 1986). We affirm.

_____

[1]The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa.

Shortly before 2:00 a.m. on May 2, 1995, Police Officer Hawley stopped an automobile that failed to dim its headlights on Highway 71 just outside of Spencer, Iowa. Hawley recognized Michael Walker, one of the two passengers, from a previous narcotics arrest, and had information from an Iowa drug task force that Walker used drugs and might be involved in drug sales. Hawley asked the driver, Lisa Jensen, if he could search the auto, and she consented. Jensen, Walker, and Menard, the other passenger, then exited and stood toward the rear of the auto while Hawley conducted his search.

Before Hawley completed the search, Officer Larsen arrived on the scene to assist. When Larsen learned Walker's identity, he reminded Hawley of a recent "Officer Safety Warning" bulletin advising that the Clay County Sheriff's Department had information that Walker carried an automatic pistol. Hawley did a pat-down search of Walker, found a loaded .32 caliber handgun, and arrested Walker for carrying a concealed weapon. Officer Larsen then asked Menard if he was carrying a gun. When Menard said no, Officer Larsen said he would do a pat-down search. Menard then admitted that he was carrying a .410 caliber handgun and handed the weapon to Larsen. Menard was arrested, and a post-arrest search revealed that he was carrying ten small plastic bags of methamphetamine.

Following the suppression hearing at which Hawley and Larsen testified, the district court concluded that it was reasonable for the officers to take action to protect their safety, and that "the pat-down search of Menard, once the weapon was found on Walker, was the least intrusive method to determine rapidly whether any further weapons were in the hands of anyone else involved in the stop." 898 F. Supp. at 1333. Therefore, the court denied Menard's motion to suppress.

On appeal, Menard concedes that Officer Hawley lawfully stopped the auto for a minor traffic violation, see Iowa Code Ann.

-2-

§ 321.415(1),[2] that Hawley properly searched the auto with driver Jensen's consent, and that the pat-down search of Walker was reasonable. However, Menard argues, the officers had no reason to suspect that he was armed or dangerous. Therefore, the decision to subject him to a pat-down search was based upon his association with Walker and violates the "particularized suspicion" requirement of Flett and Ybarra v. Illinois, 444 U.S. 85 (1979). We disagree.

A police officer who has legitimate contact with another person, and who has reason to believe that person may be armed and dangerous, may conduct a pat-down search to protect officer safety, regardless of whether there is also probable cause to arrest. See Terry, 392 U.S. at 27, 32-33 (Harlan, J., concurring), 34-35 (White, J., concurring). This case illustrates a recurring protective search issue: when police have probable cause to arrest one member of a group, is it reasonable for them to conduct pat-down searches of other members of the group to protect officer safety? Although some circuits have held that all companions of an arrestee may automatically be frisked for weapons, see United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir. 1971), we rejected that rule in Flett, applying instead the Fourth Amendment's traditional, totality-of-the-circumstances analysis. It is relevant that one member of a group has been arrested, but that does not automatically give rise to a reasonable suspicion that the others may be armed and dangerous. See 806 F.2d at 827.

---

[2]The Supreme Court in Whren v. United States, 116 S. Ct. 1769 (1996), recently confirmed that probable cause to believe that a traffic violation has occurred justifies a traffic stop. Whren is significant on another point as well. Though the district court applied an objective test in denying Menard's motion to suppress, the court worried that "rely[ing] on objective facts not subjectively relied upon by the searching officers . . . would drastically overextend Terry [v. Ohio, 392 U.S. 1 (1968)]." 898 F. Supp. at 1332. The unanimous Court in Whren laid that issue to rest, explaining: "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." 116 S. Ct. at 1775 (emphasis in original). See also Terry, 392 U.S. at 27.

In this case, Officer Hawley stopped an auto for a traffic violation at 2:00 a.m. on a relatively deserted highway. Hawley was outnumbered by the auto's occupants. When he recognized one passenger as a possible drug trafficker, he obtained consent to search the car. The Supreme Court has frequently noted the inherent danger traffic stops pose to police officers and the consequent likelihood that minimally intrusive weapons searches will be reasonable. See Michigan v. Long, 463 U.S. 1032, 1047-50 (1983); Foley v. Connelie, 435 U.S. 291, 298 (1978); Pennsylvania v. Mimms, 434 U.S. 106, 109-10 (1977); Adams v. Williams, 407 U.S. 143, 148 (1972). Thus, Officer Hawley could have reasonably conducted pat-down searches of Walker and Menard as they exited the auto, so that Hawley could complete his search without fear that its occupants would prove to be armed and dangerous should contraband be discovered. See United States v. Douglas, 964 F.2d 738, 741 (8th Cir. 1992); United States v. Brown, 913 F.2d 570, 572 (8th Cir.), cert. denied, 498 U.S. 1016 (1990); United States v. Whitfield, 907 F.2d 798 (8th Cir. 1990); cf. United States v. Jones, 759 F.2d 633, 640 n.10 (8th Cir.) (129 officers killed pursuing and stopping traffic violators in the ten years ending in 1983), cert. denied, 474 U.S. 837 (1985). Menard argues that Hawley evidenced little if any concern for his safety while searching the auto before Officer Larsen arrived. However, Fourth Amendment reasonableness does not require "that a policeman must feel 'scared' by the threat of danger." United States v. Tharpe, 536 F.2d 1098, 1101 (5th Cir. 1976) (en banc).[3]

Hawley did not pat down Walker and Menard as they exited the auto. Indeed, Walker was not searched until Officer Larsen arrived and reminded Hawley of the Officer Safety Warning. Menard argues that this delay confirms that there was no particularized suspicion to frisk him, but this ignores the realities of the situation.

---

[3]Overruled in part on other grounds, United States v. Causey, 834 F.2d 1179 (5th Cir. 1987) (en banc).

Finding a gun on Walker and arresting him heightened the threat to officer safety because an armed associate of Walker might use force to free him. See United States v. Simpson, 992 F.2d 1224, 1227 (D.C. Cir.), cert. denied, 510 U.S. 906 (1993); United States v. Bell, 762 F.2d 495, 501 (6th Cir.), cert. denied, 474 U.S. 853 (1985); Tharpe, 536 F.2d at 1100. In Ybarra, the Supreme Court held that execution of a warrant to search a tavern and its bartender did not justify a pat-down search of every patron. See 444 U.S. at 91-93. But Walker and Menard did not just happen to be together in a public place. "The relationship among the patrons at a bar is quite different from the relationship among the occupants of a house or car." United States v. Vaughan, 718 F.2d 332, 335 n.6 (9th Cir. 1983). Nor may we ignore the totality of the circumstances of this encounter -- a lonely road, late at night, a traffic violation, and suspected drug trafficking by a passenger found to be carrying a concealed weapon.

After careful review of the suppression hearing record, we conclude that the district court correctly rejected Menard's contention that he was searched for weapons "based on nothing more than his companionship with Mr. Walker." Applying the totality-of-the-circumstances standard mandated in Flett, we affirm the order denying Menard's motion to suppress and the judgment of the district court.

McMILLIAN, Circuit Judge, concurring specially.

I concur specially. This is a fact-intensive case, and I write separately to emphasize that the opinion applies the analysis in United States v. Flett, 806 F.2d 823, 827 (8th Cir. 1986), and should not be read as a retreat from its holding rejecting the automatic companion rule and instead adopting a totality-of-the-circumstances analysis, in which companionship alone is not enough to justify a pat-down search, but companionship

is one circumstance to be considered in determining the overall reasonableness of the officer's actions.

I also write separately to clarify that this case does not involve the subjective-objective issue recently resolved by the Supreme Court in <u>Whren v. United States</u>, 116 S. Ct. 1769 (1996).

Because I agree that in the present case there was more than mere companionship, I concur in the decision to affirm the district court's denial of the motion to suppress.

A true copy.

        Attest:


            CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.