PD-0096-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/27/2015 2:20:33 PM
Accepted 3/31/2015 2:16:15 PM
ABEL ACOSTA
CLERK

NO. PD-0096-15

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS

**MICHAEL JERMAINE WILLIAMS**
*Appellant*

v.

**THE STATE OF TEXAS**
*Appellee*

---

## PETITION FOR DISCRETIONARY REVIEW

---

On Petition For Discretionary Review from the Fourteenth Court of Appeals Cause No. 14-13-00527-CR, affirming the trial court's judgment in Cause No. 1350907, from the 184th District Court of Harris County, Texas.

---

FILED IN
COURT OF CRIMINAL APPEALS

March 31, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**CHERI DUNCAN**
Assistant Public Defender
Harris County, Texas
State Bar No. 06210500
**BRIAN HUTCHISON**
Legal Intern
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
cheri.duncan@pdo.hctx.net

**Counsel for Appellant**

## IDENTITY OF PARTIES AND COUNSEL

Appellant
Michael Jermaine Williams
SPN# 01154614
Harris County Jail
1200 Baker
Houston, TX 77002

Presiding Judge
Hon. Jan Krocker
184th District Court
Harris County, Texas
1201 Franklin, 17th Floor
Houston, Texas 77002

Trial Prosecutor
Luis Batarse
Assistant District Attorney
1201 Franklin, 6th Floor
Houston, TX 77002

Defense Counsel at Trial
Andre Ligon
Attorney at Law
1314 Texas St Ste 1500
Houston, TX 77002

Counsel on Appeal for Appellant
Cheri Duncan
Assistant Public Defender
Brian Hutchison
Legal Intern
Harris County, Texas
1201 Franklin, 13th floor
Houston, Texas 77002

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..................................................................................ii

TABLE OF CONTENTS.......................................................................................................iii

INDEX OF AUTHORITIES ....................................................................................................v

STATEMENT REGARDING ORAL ARGUMENT.......................................................................1

STATEMENT OF THE CASE ................................................................................................1

STATEMENT OF PROCEDURAL HISTORY .............................................................................1

QUESTIONS PRESENTED ....................................................................................................2

**QUESTION 1:**
**ARE "FURTIVE MOVEMENTS" ALONE SUFFICIENT TO JUSTIFY THE WARRANTLESS SEARCH OF A CAR'S CONSOLE DURING A TRAFFIC STOP, AS THE FOURTEENTH COURT OF APPEALS HELD IN THIS CASE, OR MUST THE STATE PROVE MORE TO OVERCOME THE PER SE UNCONSTITUTIONALITY OF SUCH A SEARCH UNDER THE FOURTH AMENDMENT, AS THE THIRTEENTH COURT OF APPEALS AND THE FEDERAL FIFTH CIRCUIT COURT OF APPEALS HAVE HELD?**

**QUESTION 2:**
**DID THE FOURTEENTH COURT OF APPEALS ERR IN ITS APPLICATION OF *MICHIGAN V. LONG* TO THIS CASE WHEN OTHER STATE COURTS OF APPEAL AND THE FIFTH CIRCUIT COURT OF APPEAL HAVE INTERPRETED *LONG* MORE NARROWLY?**

REASONS FOR REVIEW ......................................................................................................2

DISCUSSION ...................................................................................................................3

   A. THE COURT OF APPEALS IGNORED CLEARLY ESTABLISHED LAW THAT HOLDS
      THE WARRANTLESS SEARCH OF A VEHICLE TO BE PER SE UNREASONABLE............3

B. THE COURT OF APPEALS ERRED WHEN IT CONCLUDED THAT THE OFFICERS' PRETEXTUAL REASONS FOR THE SEARCH OF APPELLANT'S PASSENGER COMPARTMENT WERE LEGALLY SUFFICIENT TO OVERCOME THE PRESUMPTION THAT THE WARRANTLESS SEARCH WAS UNREASONABLE.............................................4

PRAYER ........................................................................................................6

CERTIFICATE OF SERVICE.............................................................................7

CERTIFICATE OF COMPLIANCE .....................................................................7

# INDEX OF AUTHORITIES

## Cases

*§822.41 In U.S. Currency & 2003 Dodge Ram 1500 Truck v. State*, No. 13-05-00259-CV, 2007 WL 2266209 (Tex. App. – Edinburg, Aug. 9, 2007, not designated for publication) ................................................................................................................... 6

*Alexander v. State*, 879 S.W.2d 338 (Tex.App.–Houston [14th Dist.] 1994, pet. ref'd) .... 6

*Knowles v. Iowa*, 525 U.S. 113 (1998) ................................................................................. 3

*Michigan v. Long*, 463 U.S. 1032 (1983) ....................................................................1, 2, 4, 5

*United States v. Coleman*, 969 F.2d 126 (5th Cir. 1992). ..................................................... 5

*United States v. Thibodeaux*, 276 Fed.Appx. 372 (5th Cir. 2008) ........................................ 5

*United States v. Wallen*, 388 F.3d 161 (5th Cir. 2004) .......................................................... 5

*Williams v. State*, ___ S.W. 3d ___, 2014 WL 7372804 (Tex. App. – Houston [14th Dist.], Dec. 23, 2014) ....................................................................................................... 1, 6

## Other Authorities

2013 TEX. DEP'T PUB. SAFETY TRAFFIC STOP DATA ............................................................ 2

## Rules

TEX R. APP. PROC. 66.3(a) ..................................................................................................... 1

## Constitutional Provisions

U.S. CONST. AMEND. IV .................................................................................................2, 3, 6

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because the Fourteenth Court of Appeals has decided an important and recurrent question of state and federal search-and-seizure law in a way that conflicts with another Texas court of appeals and with the Fifth Circuit Court of Appeals.[1]

## STATEMENT OF THE CASE

This petition follows the appeal of Michael Williams' conviction for possession of a fraudulent prescription form. A jury found Appellant guilty, and the judge assessed punishment at fourteen months in state jail. The appeal challenged the trial court's denial of Appellant's pre-trial motion to suppress evidence – specifically, prescription forms found in Appellant's vehicle. The Court of Appeals affirmed, holding that the search of Appellant's center console, where police found the prescription forms, was lawful under *Michigan v. Long*.

## STATEMENT OF PROCEDURAL HISTORY

The Fourteenth Court of Appeals entered its judgment on December 23, 2014. The court's opinion will be published. *Williams v. State*, ____ S.W. 3d ___, 2014 WL 7372804 (Tex. App. – Houston [14th Dist.], Dec. 23, 2014). No motion for rehearing was filed. This Court granted Appellant's motions to extend time to file petition, extending the deadline to March 24, 2015. This petition is accompanied by a final motion to extend time.

---

[1] *See* TEX R. APP. PROC. 66.3(a).

## QUESTIONS PRESENTED

**Question 1:**

**Are "furtive movements" alone sufficient to justify the warrantless search of a car's console during a traffic stop, as the Fourteenth Court of Appeals held in this case, or must the State prove more to overcome the per se unconstitutionality of such a search under the Fourth Amendment, as the Thirteenth Court of Appeals and the federal Fifth Circuit Court of Appeals have held?**

**Question 2:**

**Did the Fourteenth Court of Appeals err in its application of *Michigan v. Long* to this case when other state courts of appeal and the Fifth Circuit Court of Appeal have interpreted *Long* more narrowly?**

## REASONS FOR REVIEW

Fourth Amendment jurisprudence is filled with cases challenging arrests that follow from warrantless vehicle searches. Bad law from cases like this one does not affect only a few dangerous criminals; it potentially affects tens of thousands of drivers every year. In 2013, there were 2,551,441 traffic stops in Texas. 2013 TEX. DEP'T PUB. SAFETY TRAFFIC STOP DATA, AT 2. REP. Out of all of those traffic stops, 40,755 led to vehicle searches. *Id* at 5 Those searches led to 16,567 criminal charges filed against Texas drivers. *Id* at 6. If the Fourth Amendment's guarantee that people shall be protected from unreasonable searches and seizures is to continue to have real meaning for these tens of thousands of Texans, then this Court needs to correct the lower court and clarify the application of Fourth Amendment search-and-seizure law to non-arrest traffic stops.

The Fourth Amendment does not permit police to conduct a vehicle "search incident to citation" on the same basis as a search incident to arrest. This is true even when an officer could have, under state law, arrested the driver for the traffic violation. *See Knowles v. Iowa*, 525 U.S. 113, 114 (1998). In this case, police searched the interior of Mr. Williams' car, including the center console, without:

1. an arrest warrant;

2. a search warrant; or

3. Mr. Williams' consent.

The search was unconstitutional, and the Court of Appeals' decision that it passed Fourth Amendment muster must be corrected.

**A. The Court of Appeals ignored clearly established law that holds the warrantless search of a vehicle to be per se unreasonable.**

Mr. Williams was witnessed by an undercover police officer driving into a convenience store parking lot one afternoon, and stopping to talk with several people. The undercover officer did not see Mr. Williams engage in any transactions, but had only a suspicion that he was engaged in the sale of drugs or other illicit materials because he was talking with "street people."

Police in this case used two all-purpose law enforcement justifications for their search of Appellant's car console: "furtive movements" and "officer safety" (3 R.R. at 36 and 58). Decades ago, these terms were judicially-crafted explanations of specific

3

factual scenarios in which warrantless vehicle searches were justified. Today, they have become magic words that police and prosecutors wave over bad searches to make the Fourth Amendment disappear by mere incantation. Rather than look beyond the buzzwords to the facts, the court of appeals itself granted the state's wishes and affirmed Appellant's conviction.

The court of appeals relied on *Michigan v. Long*, 463 U.S. 1032 (1983), and its own precedent. *Long* recognizes a warrant-rule exception that permits police to search a vehicle's passenger compartment if they have an articulable and objectively reasonable belief based on specific and articulable facts that officer safety is at risk.

**B.     The court of appeals erred when it concluded that the officers' pretextual reasons for the search of Appellant's passenger compartment were legally sufficient to overcome the presumption that the warrantless search was unreasonable.**

The area where Appellant was seen talking to other individuals was a high-crime area, according to police. However, the evidence also showed that the area was home to a labor hall where people – including Appellant – gathered to look for work. The people with whom Appellant talked were typical of the neighborhood, and the undercover officer did not observe any transactions between Appellant and others. (3 R.R. at 28). Further, after being pulled over, Appellant cooperated with all orders from police, and was patted down with no weapons or drugs found on his person (3 R.R. at 144).

4

The Fourteenth Court of Appeal's logical chain to connect Appellant with activity that could give rise to a fear for officer safety was long and strained. A rational jury could not have made an implied finding that Appellant was involved in the drug trade, and therefore possibly armed and dangerous, simply because an undercover officer witnessed him talking to "street people" during the daytime in a bad neighborhood, particularly one where Appellant had reason to be.

The Fifth Circuit, in *United States v. Thibodeaux*, 276 Fed. Appx. 372, 377 (5th Cir. 2008), examined the kinds of facts that are sufficient to support a reasonable belief that a detained person has a weapon in their vehicle. In that case, the Fifth Circuit cited three cases in which searches were justified:

1. When officers saw a weapon in a detained person's vehicle. *Id.*, citing *Long*;

2. When a detained person had disobeyed officer's orders and had an outstanding warrant. *Id.*, citing *United States v. Wallen*, 388 F.3d 161, 162-66 (5th Cir. 2004); and

3. When a person detained as part of a narcotics investigation was found with bundles of money after a pat-down. *Id.*, citing *United States v. Coleman*, 969 F.2d 126, 128-32 (5th Cir. 1992).

Without facts similar to those, the Fifth Circuit ruled in *Thibodeaux* that an extended traffic stop because of a suspicion that the detained person had a weapon was not justified. In the instant case, none of those pressing facts existed, either. Nonetheless, the Fourteenth Court of Appeals' opinion approved a warrantless search on facts that were far less suggestive of a reasonable basis for fears of officer safety.

5

The court of appeals' second reason for affirming was based on police testimony that Appellant made furtive gestures towards the center console after he was pulled over. *Williams*, 2014 WL 7372804 at *2. The court cited no authority from this Court; instead, it relied on one of its own previous opinions to justify the search based on furtive movements alone: *Alexander v. State*, 879 S.W.2d 338, 343 (Tex.App.–Houston [14th Dist.] 1994, pet. ref'd). However, at least one other court of appeals has found that furtive gestures alone do not constitute sufficient grounds to justify an officer's fear for his safety. *See §822.41 In U.S. Currency & 2003 Dodge Ram 1500 Truck v. State*, No. 13-05-00259-CV, 2007 WL 2266209, at *3 (Tex. App. – Edinburg, Aug. 9, 2007, not designated for publication).

The lower court's opinion in this case would allow for the searches of untold numbers of people who are engaged in otherwise legal activities who happen to make movements in their car when pulled over for a traffic violation, whether searching for proof of insurance or out of mere nervousness. This Court should correct the legal error in this case to preserve the freedom of movement guaranteed by the Fourth Amendment, and to resolve the conflict created by this opinion.

## PRAYER FOR RELIEF

For these reasons, Appellant prays that this Court grant his petition, and after review, reverse the Court of Appeals and remand this case to the trial court with instructions to suppress the results of the vehicle search.

Respectfully submitted,

**Alexander Bunin**
Chief Public Defender
Harris County Texas

*/s/ Cheri Duncan*

_____

**Cheri Duncan**
Assistant Public Defender
Texas Bar No. 06210500
1201 Franklin, 13th floor
Houston Texas 77002
(713) 368-0016 telephone
(713) 437-4318 e-fax
cheri.duncan@pdo.hctx.net

### CERTIFICATE OF SERVICE

I certify that a copy of this brief was served electronically to the Harris County District Attorney and the State Prosecuting Attorney on March 27, 2015.

*/s/ Cheri Duncan*

_____

Cheri Duncan

### CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Rule 9.2, TEX. R. APP. PROC. It was prepared on a computer using 14-point Garamond type. It contains 1,230 words.

*/s/ Cheri Duncan*

_____

Cheri Duncan

**Affirmed and Opinion filed December 23, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00527-CR

---

## MICHAEL JERMAINE WILLIAMS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1350907**

---

## OPINION

Appellant was convicted of possessing a fraudulent prescription form. *See* Tex. Health & Safety Code § 481.129(c)(2). The question on appeal is whether the trial court abused its discretion by refusing to suppress the form, which was discovered during the warrantless search of a vehicle. Because the record supports a finding that the search was performed in the legitimate interests of officer safety, we conclude that the trial court did not abuse its discretion. We therefore affirm the trial court's judgment.

# BACKGROUND

Police were conducting surveillance in a high-crime area where there had been recent reports of drug activity. An undercover officer saw appellant drive to an area gas station, where he was flagged down by several men who were unkempt and described as being either homeless or "street guys." Appellant spoke briefly with the men, and then he drove away. He did not enter the gas station or purchase any gas.

The undercover officer decided to follow appellant because his actions had raised suspicions about a possible drug transaction. During his pursuit, the undercover officer witnessed appellant make two lane changes, and on neither occasion did he use an appropriate signal. The undercover officer reported the traffic violations to a marked patrol unit, which had been waiting nearby to assist in the investigation.

The marked patrol unit approached appellant's vehicle with lights and siren engaged. The undercover officer, who by this time had moved to an adjacent lane, saw appellant panic and reach towards the center console. The undercover officer advised the marked patrol unit to proceed with caution because of appellant's panicked behavior.

After appellant pulled his vehicle over, a uniformed officer in the marked patrol unit saw that appellant "was still doing a lot of movement with the center console and around the driver's seat area." Another uniformed officer saw that appellant was actively "fidgeting." The officers ordered appellant out of the vehicle and patted him down. No weapons were found on his person. Appellant was then moved to the curb, without having been placed in handcuffs.

Still concerned for their own safety, the officers conducted a limited search of the center console, where they found several fraudulent prescription forms, but no weapons. The search was performed without a warrant and without appellant's consent. Appellant moved to suppress the forms, arguing that the officers had no reason to search the inside of his vehicle on a routine traffic stop. The trial court denied the motion without entering findings of fact and conclusions of law.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *See Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). We give almost total deference to a trial court's determination of the historical facts that are supported by the record, especially if the trial court's findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same level of deference to a trial court's ruling on "application of law to fact questions" or "mixed questions of law and fact" if resolution of those questions also turns on an evaluation of credibility and demeanor. *Id.* Where, as here, the trial court did not make written findings, we review the evidence in the light most favorable to the trial court's ruling and assume that the court made implied findings that are supported by the record and that buttress its conclusion. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). For pure questions of law, our review is de novo. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

## GOVERNING LAW

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV. Warrantless searches are generally deemed unreasonable unless an exception applies. *See Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception allows an officer in the course of

a temporary detention, or "*Terry* stop," to search a detainee for weapons if the search is reasonably warranted for the officer's safety or the safety of others. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). In some circumstances, the right to conduct a protective search may also extend to the interior of the detainee's vehicle. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).

An officer may search a detainee's vehicle if the officer has a reasonable belief based on specific and articulable facts which, when taken together with the rational inferences from those facts, reasonably warrant the officer's belief that the detainee is dangerous and the detainee may gain immediate control of a weapon. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983). A protective search of a vehicle must be limited to only those areas within the detainee's immediate control where a weapon may be placed or hidden. *Id.* The officer does not have to be absolutely certain that the detainee possesses a weapon; the test is only whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.* at 1050.

If contraband other than weapons is discovered during the protective search of a vehicle, the officer is not required to ignore it, and the Fourth Amendment does not require its suppression. *Id.*

## ANALYSIS

The record supports an implied finding that the officers had a reasonable belief that appellant was dangerous. The evidence showed that the officers saw appellant driving through a high-crime area, where they were specifically investigating reports of increased drug activity. Appellant was flagged down at a gas station, where he briefly conversed with several men who appeared to be "street guys." Appellant departed after a short time, without having conducted any business with the gas station itself.

4

The undercover officer testified that drug dealers are known for flagging people down on the streets, and based on the totality of the circumstances, the undercover officer came to suspect that appellant had been involved in a drug transaction. It was reasonable for the undercover officer to believe that appellant may have been either a consumer or a supplier of drugs. Because the Court of Criminal Appeals has recognized that "weapons and violence are frequently associated with drug transactions," it was also reasonable for the officers to believe that appellant may have been armed. *See Carmouche*, 10 S.W.3d at 330 (quoting *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990)).

The record also supports an implied finding that the officers reasonably believed that appellant was keeping a weapon in his center console. When the marked patrol unit was in pursuit, appellant started to panic and reach towards the center console. Appellant also made furtive gestures even after he had parked his vehicle. It would not have been unreasonable for the officers to believe that appellant was concealing or accessing a weapon in the center console. *See Alexander v. State*, 879 S.W.2d 338, 343 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (protective search of vehicle was reasonable where driver was observed "scrambling" under the seat after his encounter with police); *see also Connecticut v. Butler*, 993 A.2d 970, 978–79 (Conn. 2010) (protective search of a center console following a routine traffic stop was reasonable where the driver was observed to have been making furtive movements toward the console, the driver was in an area where drug trafficking was frequent, and there was other evidence suggesting that the driver was involved in the drug trade).

Appellant contends that the protective search of his vehicle was unreasonable because he "was not within reach of his car's interior at the time police searched his car." Instead, he was sitting on the curb, far removed from the

5

center console and any weapons that may have been within it. The Supreme Court rejected this proximity argument in *Long*. There, the Court recognized that a detainee may still "break away from police control and retrieve a weapon from his automobile." *See Long*, 463 U.S. at 1051. Furthermore, if the detainee is not placed under arrest, "he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* at 1052. These concerns existed during appellant's investigative detention because he had not been handcuffed, arrested, and securely placed in the back of a patrol car. The officers were engaged in an investigation "at close range," and they were not required to "adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Id.*

Appellant also contends that his case is similar to *Knowles v. Iowa*, 525 U.S. 113 (1998) and *Arizona v. Gant*, 556 U.S. 332 (2009), two cases in which the Supreme Court held that the warrantless search of a vehicle was unreasonable. We conclude that neither case is applicable. In *Knowles*, the Court reviewed a state statute that authorized an officer to conduct a full search of a vehicle when the driver had been cited, but not arrested, for a simple traffic violation. *See* 525 U.S. at 115. The Court held that, during a routine traffic stop, a concern for officer safety can justify certain "minimal" intrusions of the driver's privacy, such as ordering the driver out of the vehicle, but not the "considerably greater" intrusion attending a full field-type search of the vehicle. *Id.* at 117.

Here, there was no "full-blown search" of appellant's vehicle, so the central holding in *Knowles* would not apply. The officers searched only the center console. This limited protective search was specifically sanctioned in *Knowles* as one of the lesser searches that may be performed in the interests of officer safety. *Id.* at 117–18 (citing *Long*).

In *Gant*, the Court considered the scope of a warrantless vehicular search that is incident to an arrest. *See* 556 U.S. at 335. There, police conducted a search of a vehicle after the driver had been arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car. *Id.* The Court determined that the search could not be justified in the interests of officer safety because, at the time of the search, the driver was not within reaching distance of his vehicle and he posed no risk to the officers. *Id.* at 344, 348.

In this case, appellant had not been arrested at the time of the search, nor had he been handcuffed, or locked securely in the back of a patrol car. He was just a detainee in a *Terry* stop. Unlike the driver in *Gant*, appellant was in a position to break away from police control and reenter his vehicle, where a weapon may have been stashed. *See Long*, 463 U.S. at 1049.

Appellant's case is also unlike two other cases arising out of the Houston Courts of Appeals, *Canales v. State*, 221 S.W.3d 194 (Tex. App.—Houston [1st Dist.] 2006, no pet.) and *State v. Adam*, No. 14-98-01268-CR, 1999 WL 997010 (Tex. App.—Houston [14th Dist.] Nov. 4, 1999, no pet.) (per curiam) (not designated for publication). In *Canales*, two officers saw a car suspiciously parked outside of a gas station late at night in a high-crime area. *See* 221 S.W.3d at 196. One officer approached the driver's side of the vehicle, and found torn pieces of a cigar scattered on the ground. *Id.* at 197. The officer knew from his experience that drug users would buy cigars, empty out their contents, and then fill them with marijuana. *Id.* While the officer was talking to the driver of the vehicle, who had been sitting inside, the officer's partner was standing on the passenger side, out of view of the cigar pieces. *Id.* The partner unilaterally ordered the driver out of the vehicle, allegedly because the driver had made a furtive movement near his seat.

*Id.* The first officer performed a protective frisk and the partner searched the seat, where evidence of marijuana was found. *Id.*

The First Court of Appeals held that the search of the vehicle was unreasonable because the record lacked specific and articulable facts showing that the driver might be dangerous. *Id.* at 204. Only the first officer, the one who had performed the protective frisk, testified during the suppression hearing, but he never testified that he believed the driver to be dangerous or capable of gaining immediate control of a weapon hidden inside the vehicle. *Id.* at 203. The officer's partner, the one who had conducted the search of the vehicle, did not testify, and the only evidence offered in support of his search was his observation of a furtive movement, which courts have held to be insufficient by itself. *Id.* at 200, 204.

Appellant's case contains much more evidence than *Canales*. All of the officers involved in the investigation testified during appellant's trial. Their testimony established that appellant met with several men at a gas station under circumstances that were reasonably suggestive of a drug transaction. The officers' testimony also established that appellant panicked and reached for the center console as he was being pulled over. This evidence justified a reasonable belief that appellant might have had a weapon that he was prepared to use.

In *Adam*, a driver was pulled over for making an attempted U-turn in a farm truck with a horse trailer in tow. *See* 1999 WL 997010, at *1. Officers suspected that the driver was intoxicated, but the driver passed all field-sobriety tests. *Id.* Before the driver could reenter the vehicle, the officers conducted a protective search for weapons. *Id.* They found a small quantity of marijuana in the process. *Id.*

The trial court suppressed the marijuana, and the State appealed to this court. The State argued that the search was reasonable because "farm trucks commonly

8

contain firearms" and one of the officers "had feelings of insecurity." *Id.* at *5. We rejected the generalization as "patently unreasonable," and we held that the officer's subjective belief was wholly unsupported by specific and articulable facts showing that the driver had posed a danger. *Id.* at *6.

Again, appellant's case is very different. Many courts, including the Court of Criminal Appeals, have recognized a common association between weapons and drug transactions. *See Carmouche*, 10 S.W.3d at 330. The officers in this case justifiably relied on such authority, and their own experience from the field, when they decided to approach appellant with caution. Furthermore, the officers in this case acted on more than just a hunch or a "feeling of insecurity" when they decided to search the center console. The officers knew that appellant had panicked and reached for the center console, unlike anything that was observed from the driver in *Adam*. The officers could have reasonably believed that appellant had a weapon in that center console.

## CONCLUSION

Having considered all of the specific and articulable facts in the record, and the rational inferences from those facts, we conclude that the officers were capable of reasonably believing that appellant was dangerous and that he might gain immediate control of a weapon. Therefore, the officers' protective search was lawful under *Long*, and the trial court did not abuse its discretion by denying the motion to suppress. The judgment of the trial court is affirmed.


/s/     Tracy Christopher
            Justice


Panel consists of Justices Christopher, Donovan, and Wise.
Publish — Tex. R. App. P. 47.2(b).